UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON MEDICAL CENTER – SOUTH CORPORATION d/b/a BOSTON MEDICAL CENTER – SOUTH,<br><br>*Plaintiff,*<br><br>v.<br><br>1199SEIU UNITED HEALTHCARE WORKERS EAST,<br><br>*Defendant.* | Civil Action No. _______________<br><br>Related to Civil Action No. 1:26-CV-11215-LTS |

**COMPLAINT TO VACATE LABOR ARBITRATION AWARD**

Plaintiff Boston Medical Center – South Corporation d/b/a Boston Medical Center – South ("BMC South") brings this action against Defendant 1199SEIU United Healthcare Workers East ("1199SEIU" or "Union") under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, to vacate the October 6, 2026 Opinion and Award (the "Award") issued by Arbitrator Marc D. Greenbaum in Labor Relations Connection Case No. 328-25. In support, BMC South alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction under 29 U.S.C. § 185 and 28 U.S.C. § 1331 because this action arises under a contract between an employer and a labor organization representing employees in an industry affecting commerce.

2. Venue is proper in this District under 29 U.S.C. § 185(a) and (c) and 28 U.S.C. § 1391(b) because the Union represents employees in this District, the CBA was performed here, and the arbitration giving rise to this action concerned employment in this District.

3. This action is timely. The Arbitrator issued the Award on October 6, 2026, and

BMC South received it by email on October 6, 2026. BMC South files this Complaint on November 5, 2026, within thirty days of the issuance and receipt of the Award, as required by the limitations period applicable to actions to vacate labor arbitration awards in this District. *See* M.G.L. c. 150C, § 11(b); *Local 509, SEIU v. Fid. House, Inc.*, 518 F. Supp. 2d 317, 322 (D. Mass. 2007) (applying the thirty-day limitations period set forth in M.G.L. c. 150C, § 11(b) to a motion to vacate a labor arbitration award under § 301).

## PARTIES

4. BMC South is a nonprofit corporation with its principal place of business in Brockton, Massachusetts, and was formerly known as BMC Community Hospital Corporation.

5. BMC South is an employer in an industry affecting commerce under the LMRA.

6. 1199SEIU is a labor organization that represents employees in an industry affecting commerce under the LMRA and maintains its principal place of business at 498 Seventh Avenue, New York, New York 10018.

## FACTUAL BACKGROUND

### A. Pre-Acquisition Background.

7. Before October 1, 2024, Steward Health Care System, LLC ("Steward") owned and operated Good Samaritan Medical Center ("GSMC") in Brockton, Massachusetts.

8. Before October 1, 2024, the Union and Steward were parties to a collective bargaining agreement that recognized 1199SEIU as the exclusive collective bargaining representative of certain employees employed by Steward at various hospitals in Massachusetts, including GSMC. That CBA extended through October 31, 2025 (the "CBA"). *See* **Exhibit A**, *Collective Bargaining Agreement* & **B**, *Extension Agreement*.

### B. Steward Files A Chapter 11 Bankruptcy Petition.

9. On May 6, 2024, Steward filed a voluntary petition for relief under Chapter 11 of

Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas (Houston Division) (the "Bankruptcy Court") entitled *In re Steward Health Care System LLC*, Case No. 24-90213 (the "Bankruptcy Proceeding").

10. On May 7, 2024, counsel for the Union entered an appearance in the Bankruptcy Proceeding. *See* Dkt. Nos. 109, 111, and 275.

11. On May 15, 2024, Steward filed an Emergency Motion for entry of an Order (I) Approving (A) Global Bidding Procedures for Sales of the Debtors' Assets, (B) Form and Manner of Notice of Sales, Auctions, and Sales Hearings, and (C) Assumption and Assignment Procedures, and Form and Manner of Notice of Assumption and Assignment; (II) Authorizing Designation of Stalking Horse Bidders; (III) Scheduling Auctions and Sale Hearings; and (IV) Granting Related Relief Filed by Debtor Steward Health Care System LLC ("Emergency Motion for a Bidding Order"). *See* Dkt. No. 281.

12. On June 3, 2024, the Bankruptcy Court entered an Order approving the relief requested in Steward's Emergency Motion for a Bidding Order. *See* Dkt. 626.

13. On August 30, 2024, Steward filed a Notice of Designation of Successful Bid and Proposed Sale Order for GSMC and St. Elizabeth's Medical Center ("SEMC") ("August 30, 2024 Notice"). Therein, Steward identified BMC Community Hospital Corporation, now BMC South, as the successful, qualified bidder. *See* Dkt. 2260.

14. Attached as Exhibit B to the August 30, 2024 Notice was the proposed order approving the sale transaction for GSMC and SEMC. *See* Dkt. 2260.

15. Also attached to the August 30, 2024 Notice was a final and executed Asset Purchase Agreement by and among Steward St. Elizabeth's Medical Center of Boston, Inc. and Steward Good Samaritan Medical Center, Inc., as Sellers, and BMC Community Hospital

Corporation, as Buyer (the “APA”). *See* Dkt. 2260.

16. ¶ 1.3 of the APA (Assumed Liabilities) states:

> On the terms and subject to the conditions set forth in this Agreement, Buyer shall assume at the Closing and effective as of the Effective Time only the following Liabilities of Seller and Seller Affiliates, including Seller Parties, and no other Liabilities, which other Liabilities shall be retained by Seller and the Seller Affiliates, including the Seller Parties, as applicable, without duplication and only to the extent not paid, performed discharged or otherwise satisfied prior to the Closing (collectively, the ‘Assumed Liabilities’):
>
> …
>
> (b) solely to the extent arising from periods occurring on or after the [October 1, 2024] Closing and relating (and only to the extent so relating) to facts, circumstances or occurrences first arising after the [October 1, 2024 11:59 p.m.] Effective Time and that do not arise from or relate to, and are not in connection with, any event, circumstance or condition occurring or existing at or prior to the Effective Time that, with or without notice or lapse of time, would constitute or result in a breach, violation or default under applicable Law or any such Assumed Contracts by Seller or the Seller Affiliates prior to Closing[.]

*See* Dkt. 2260.

17. Schedule 6.1(c) (Seller Employees) of the APA identifies the CBA as an Assumed Contract, listing it as follows: “Collective Bargaining Agreement between Steward Health Care System and 1199SEIU United Healthcare Workers East, effective November 1, 2019, and expiring October 31, 2025, as modified by that certain (undated) Memorandum of Agreement.” *See* Dkt. 2260.

18. On September 2, 2024, the Union filed a limited objection to Steward’s proposed sale of GSMC and SEMC to BMC Community Hospital Corporation, alleging that the proposed sales were in contravention of Article XXVI (“Successor Clause”) of the collective bargaining agreement between the Union and Steward. The Union alleged:

> The Debtors have agreed that the Purchasers will assume collective bargaining agreements subject to certain specified and unspecified modifications. This is an outright violation of the Successor Clause, which *unconditionally* requires Steward to include a term in [the] APA stating that the Purchaser will recognize the Union and be bound by the existing terms of the collective bargaining agreement. Additionally, the Debtors and Purchasers seemingly disregard the requirements of Section 365(b) of the Bankruptcy Code by (a) assuming and assigning the CBA without fully addressing cure obligations thereunder, either by payment-in-full by the Debtors at the Effective Time or by assumption by the Purchasers and payment in the ordinary course, and (b) the Purchasers purporting to assume the collective bargaining agreements without unambiguously assuming all ordinary course obligations and liabilities thereunder. Finally, despite language to the contrary in [the APA], the Purchaser[] cannot use Section 363(f) of the Bankruptcy Code to exempt themselves from status or obligations as a 'successor employer' under the NLRB, which status and obligations exist independently of any CBA, arise solely out of a purchaser's post-sale conduct, and do not constitute a property interest subject to Section 363(f).

*See* Dkt. 2283 (emphasis in original).

19. On September 13, 2024, the Bankruptcy Court issued an Order approving the Asset Purchase Agreement for BMC Community Hospital Corporation's purchase of GSMC ("September 13 Order"). *See* **Exhibit C,** *September 13 Order & Asset Purchase Agreement*.

20. The September 13 Order states that: "[a]ll objections, statements, and reservations of rights, if any, with regard to the relief in the Motion that have not been withdrawn, waived, settled, or otherwise dealt with herein are hereby overruled on the merits, with prejudice." *See* **Exhibit C** at 20.

21. The September 13 Order contains a provision titled "Free and Clear Transfer Required by Buyer." **Exhibit C** at 14. That provision states:

> The Buyer would not have entered into the APA and would not consummate the Sale Transaction, thus adversely affecting the Debtors, their estates, their creditors, their employees, and other parties in interest, if the sale of the Purchased Assets was not free

> and clear of the Liens, Claims, Encumbrances, and Interests (other than Assumed Liabilities, Permitted Encumbrances, and as otherwise provided in the APA) or if the Buyer would be liable for such Liens, Claims, Encumbrances, and Interests, including, without limitation and as applicable, liabilities that are not expressly assumed by the Buyer as set forth in the APA or pursuant to this Order. In closing the Sale Transaction, the Buyer shall be deemed to have materially relied on findings and decrees in this Order.

**Exhibit C** at 14.

22. The September 13 Order also states:

> The transfer of the Purchased Assets and the Sale Transaction is a legal, valid, and effective transfer of all of the legal, equitable, and beneficial right, title, and interest in and to the Purchased Assets free and clear of the Liens, Claims, Encumbrances, and Interests, except for Assumed Liabilities, Permitted Encumbrances, and as otherwise provided in the APA.

**Exhibit C** at 14.

23. The September 13 Order contains a "Satisfaction of Section 363(f) Standards" provision. **Exhibit C** at 14-15. That provision states:

> The Debtors are authorized to sell the Purchased Assets free and clear of the Liens, Claims, Encumbrances, and Interests, other than Assumed Liabilities, Permitted Encumbrances, and as otherwise provided in the APA (with such Liens, Claims, Encumbrances, and Interests attaching to the proceeds with the same nature, validity, priority, extent, perfection, and force and effect that the Liens, Claims, Encumbrances, and Interests encumbered the Purchased Assets immediately prior to the entry of this Order) because, with respect to each creditor or other person or entity asserting a Lien, Claim, Encumbrance, or Interest, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Each creditor or other person or entity asserting a Lien, Claim, Encumbrances, or Interest in the Purchased Assets (i) has, subject to the terms and conditions of this Order, consented to the Sale Transaction or is deemed to have consented to the Sale Transaction, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien, Claim, Encumbrance, or Interest, or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of the Liens, Claims, Encumbrances, and Interests who did not object (or who ultimately withdrew their objections, if any) to the

> Sale Transaction or the Motion are deemed to have consented to the Motion and Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.

**Exhibit C** at 14-15.

24. The September 13 Order's "No Successor Liability" provision states:

> Neither the Buyer nor any of their affiliates are successors to the Debtors or their estates by reason of any theory of law or equity, and, other than as provided in this Order, neither the Buyer nor any of their affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates. Without limiting the generality of the foregoing, and except as otherwise expressly provided herein or in the APA, neither the Buyer nor any of their affiliates shall be liable for any claims against the Debtors or any of their predecessors or affiliates (including claims relating to the Payor Agreements for services rendered by or amounts paid to the Debtors prior to Closing, subject to paragraph 17 hereof (solely relating to the Debtors' Medicare provider agreements ('Medicare Provider Agreements') with the Centers for Medicare & Medicaid Services (together with its applicable regional offices, and Medicare Administrative Contractors, and other contractors or agents auditing or administering the Medicare program, collectively, 'CMS'))), and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, without limitation, under any theory of antitrust, successor or successor employer liability (including any obligations pursuant to COBRA) with respect to any employee benefit plan as defined in Section 3(3) of ERISA, environmental, successor, strict or transfer liability, labor law (including relating to any labor unions or collective bargaining agreements), de facto merger, mere continuation, or substantial continuation, whether known or unknown as of Closing, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, without limitation, liabilities on account of warranties, intercompany loans, receivables among the Debtors and their affiliates, environmental liabilities, claims relating to the Payor Agreements for services rendered by or amounts paid to the Debtors prior to Closing (subject to paragraph 17 hereof (solely with respect to the Medicare Provider Agreements)), any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the Closing. The Buyer is not, and the consummation of the Sale Transaction will not render the Buyer, a mere continuation, and the Buyer is not holding itself out as a mere

> continuation, of any of the Debtors or their respective estates, enterprise, or operations, and there is no continuity or common identity between the Buyer and the Debtors. Accordingly, the Sale Transaction does not amount to a consolidation, merger, or de facto merger of the Buyer with or into any of the Debtors or their estates and the Buyer is not, and shall not be deemed to be, a successor to any of the Debtors or their estates as a result of the consummation of the Sale Transaction.

**Exhibit C** at 15-16.

**C. The Memorandum of Agreement Between BMC South and 1199SEIU.**

25. On September 30, 2024, the Union signed a Memorandum of Agreement with BMC South (the "MOA"). The MOA states in relevant part:

> The Parties hereto agree as follows:
>
> 1. As of the Closing, Seller shall assign that certain CBA to Buyer and Buyer shall accept such assignment. Buyer shall only assume Liabilities related to the CBA pursuant to the terms set forth in the Purchase Agreement.
>
> 2. As of Closing, the CBA shall continue in full force and effect with the following modifications:
>
> (a) All references to Sellers or any affiliate of Seller in the CBA shall be replaced with references to Buyer or any affiliate of Buyer;
>
> (b) All provisions that apply to Seller's facilities, operations, and businesses other than the Purchased Assets, shall be struck from the CBA; and
>
> …
>
> 3. The CBA shall be amended by this Agreement and this Agreement shall supersede any conflicting provision in the CBA.
>
> 4. Nothing in this Agreement shall affect or impair any rights or obligations of Sellers or Buyer under the Purchase Agreement.

**Exhibit D**, *Memorandum of Agreement*.

26. At 11:59 p.m. on October 1, 2024 (the "Effective Time"), BMC South acquired GSMC from Steward.

**D. The Relevant CBA Provisions.**

27. Article 12.01 of the CBA provides that bargaining unit members may receive a wage increase or a lump sum bonus each year based on their years of service, job classification, and placement on the CBA's applicable wage scale. **Exhibit A** at 18-21.

28. Article 24 of the CBA contains a mandatory grievance resolution procedure that provides for binding arbitration for the resolution of disputes arising under the CBA. **Exhibit A** at 49-51.

29. Article 24 states:

> The arbitrator's authority shall be limited to interpreting and applying the provisions of the relevant Agreement to the grievance as submitted to him or her for arbitration in accordance with the grievance submitted at Step 3, and they shall have no authority directly or indirectly to modify, amend, add to or subtract from, change or disregard any of the provisions of the relevant agreement.

**Exhibit A** at 49-51.

**E. 1199SEIU Files a Class Grievance Based on Alleged Violations Arising from Circumstances and Omissions Occurring at or Before the Effective Time.**

30. On April 2, 2025, the Union submitted a Step 2 Class Action grievance (the "Grievance") under Articles 12.01 (wages), 24 (Grievance and Arbitration Procedure), 26 (Successor Clause) and "other related clauses." **Exhibit E**, *Class Action Grievance*.

31. The Grievance form submitted stated:



1199SEIU
United Healthcare Workers East

**1199 SEIU/BMC GRIEVANCE FORM**

**GRIEVANCE#**
**BMC Facility: Good Samaritan Medical Center**
**DATE: 4/2/2025**
**GRIEVANT: Class Action, All Bargaining Unit Members at GSMC**
**DELEGATE: Andy Rodgers**
**DEPARTMENT: Class Action**

**NATURE OF GRIEVANCE:**
*The contract has been violated in the following way(s):*
*(Use contract clauses if you know them)*

All bargaining unit members at Good Samaritan Medical Center who were contractually eligible for anniversary step increases prior to October 1, 2024, but whose wage rates were not adjusted accordingly. These contractual step increases remain uncorrected under BMC's ownership, resulting in continued wage violations.

Articles Violated:

- Article 12.01 – Wages
- Article 24 – Grievance and Arbitration Procedure
- Article 26 – Successor Clause

*The Hospital violated the contract as stated above as well as violating other related clauses.*
**REMEDY REQUESTED:**

- Immediate correction of current wage rates for all impacted employees based on missed anniversary step increases.
- Retroactive payment of the difference in wage rates from **October 1, 2024 to the present**.
- Interest on unpaid wages.
- Written commitment to audit and correct any other missed contractual wage increases going forward.
- Any and all other appropriate remedies.

*We wish the above plus all other possible remedies.*

STEP 1 -
Submitted to and date:__________Hearing date______Response/ date:__________

STEP 2 -
Submitted to and date:__________Hearing date______Response/ date:__________

STEP 3-
Submitted to and date:__________Hearing date______Response/ date:__________

*See* **Exhibit E**.

32. On April 30, 2025, BMC South denied the Grievance as substantively not arbitrable, maintaining that the alleged violations of the collective bargaining agreement occurred before, or were connected to, an event or condition existing at or before the Effective Time, and pursuant to the Bankruptcy Court's September 13, 2024 Order and the Asset Purchase Agreement, BMC South did not assume liability for the alleged violations. **Exhibit F**, *Grievance Denial*.

33. On May 19, 2025, the Union filed a Demand for Arbitration. **Exhibit G**, *Arbitration Demand*.

**F. BMC South Objects To The Arbitrator's Authority To Determine The Threshold Question Of Whether The Class Action Grievance Is Substantively Arbitrable.**

34. Arbitrator Marc Greenbaum was selected to hear the Grievance.

35. On October 17, 2025, BMC South notified the contractually agreed-upon arbitration administrator, the Labor Relations Connection, and the Union of its position that the

underlying grievance in this matter is not substantively arbitrable and of its refusal to participate in arbitration. **Exhibit H**, *October 17 and 18 Correspondence*.

36. On October 29, 2025, Arbitrator Greenbaum convened a conference call to discuss BMC South's position regarding the substantive arbitrability of the Grievance. **Exhibit I**, *October 29, 2025 Correspondence*.

37. During the October 29 conference call, BMC South maintained its position that the underlying grievance is not substantively arbitrable and reiterated its refusal to arbitrate that preliminary issue. *See* **Exhibit I**.

38. Arbitrator Greenbaum informed the parties that he intended to proceed with the arbitration hearing, and he would do so *ex parte* if BMC South elected not to participate at the hearing. *See* **Exhibit I**.

39. On November 13, 2025, BMC South submitted a letter to Arbitrator Greenbaum objecting to his authority to determine the preliminary issue of substantive arbitrability. **Exhibit J**, *November 13, 2025 Letter*.

40. On November 14, 2025, Arbitrator Greenbaum convened a conference with BMC South and the Union, at which time he denied BMC South's demand to stay the arbitration hearing.

41. Arbitrator Greenbaum rescheduled the arbitration hearing for March 20, 2026.

42. On March 11, 2026, BMC South submitted a letter to Arbitrator Greenbaum renewing its request to stay arbitration. **Exhibit K**, *March 11, 2026 Correspondence*.

43. On March 12, 2026, Arbitrator Greenbaum denied BMC South's request to stay arbitration. **Exhibit L**, *March 12, 2026 Correspondence*.

44. The matter was heard by Arbitrator Greenbaum on March 20, 2026, and June 22, 2026, on a "reservation of rights" basis by BMC South wherein it was recognized that BMC South,

by going forward in arbitration, was not waiving its argument or right to have the arbitrability issue determined by the judiciary. **Exhibit M**, *Hearing Transcripts*, Vol. I, at 5:20-7:21.

45. BMC South did not present a case on the merits during the hearing. *See* **Exhibit M**, Vol. II, at 92:24.

**G. Arbitrator Greenbaum's Award.**

46. On October 6, 2026, the Arbitrator issued the Award. **Exhibit N**, *Arbitration Award*.

47. In the Award's Factual Background, the Arbitrator stated that BMC South agreed to assume the extended CBA, "but its liability for any breaches was limited to those arising on or after October 1, 2024," and that the Parties' September 30, 2024 MOA reflected that assumption, "including the limitation on its liability for any breaches arising prior to October 1, 2024." **Exhibit N** at 5.

48. The Arbitrator stated that he was "not empowered to consider, much less resolve" BMC South's substantive arbitrability objection, which he recognized is "reserved for judicial determination." *Id.* at 2; *see also id.* at 5 n.2.

49. The Arbitrator nonetheless concluded that BMC South "violated Article 12 of the Agreement by failing to pay anniversary step or wage increases that became due in September 2024 anytime after October 1, 2024." **Exhibit N** at 23.

50. In rejecting BMC South's timeliness defense, the Arbitrator applied a continuing violation theory under which "a triggering event occurs each time an employee receives a paycheck with an improper pay rate because each paycheck inflicts a separate injury," reasoning that otherwise "[t]wo virtually indistinguishable employees would be paid at different rates" and that the parties' wage grid "demonstrates the parties' efforts to achieve wage uniformity among

similarly situated employe[e]s." **Exhibit N** at 16-17.

51. The Arbitrator recognized that Article 12 "does not provide for simple anniver[s]ary increases" and that "[i]ts application requires more detailed analysis." **Exhibit N** at 7. As the Arbitrator described it, the form of anniversary compensation to which an employee is entitled turns on (a) the employee's experience step, which for non-technical employees "is measured by their length of service" and for technical employees "by the date they acquired any required licenses or certifications or their experience in comparable positions," such that it "does not necessarily coincide with their first day of employment"; and (b) the employee's actual placement on the wage grid relative to that experience step. *Id.* at 8-9 & n.3. Depending on those determinations, an employee may be entitled to a two percent wage increase, a four percent increase until reaching the scale, or only a two percent lump sum bonus. *Id.* at 7-8, 18-19. The Arbitrator likened the required analysis to "putting together a jigsaw puzzle" that "requires examining separate documents reflecting the pay history, length of service and job titles" of each class member. *Id.* at 9.

52. The Arbitrator also acknowledged that the Union "filed this grievance without performing any of this analysis," and that BMC South "does not know how Steward utilized the hire dates of employees hired prior to [Steward's] 2010 acquisition of the Hospital in applying the Agreement." **Exhibit N** at 9, 20-21.

53. The Arbitrator nevertheless relied on the Steward records, which he characterized as "all that is available," to conclude that "as few as seven and perhaps as many as nine" of the twenty-six class members should have received anniversary increases. **Exhibit N** at 21-22. In reaching that conclusion, the Arbitrator acknowledged "uncertainty about the hire dates utilized by Steward and the like" but nevertheless treated two employees as eligible for increases by

"[a]ssuming their hire dates fall under the contract standard." *Id.* at 21. The Arbitrator also relied on testimony from two employees. *Id.* at 21-22. One of those employees, an Exercise Technician, was paid at a rate that the Arbitrator found was below the applicable experience step "unless her position was deemed a technical classification, an issue on which the record is silent." *Id.* at 10. The Arbitrator nevertheless included her among the employees he found should have received anniversary increases. *Id.* at 22.

54. The Award ordered that class members "shall, if determined eligible, be made whole," and directed that "[t]he specifics of the make whole remedy, in particular, the identification of class members entitled to a step or wage increase under the arbitrator's interpretation of Article 12 must be determined by the parties upon remand." **Exhibit N** at 22-23.

55. The Award resolves the issue of liability on the Grievance as submitted and directs that make-whole relief be implemented by the parties; it is therefore final and ripe for review.

**RELATED ACTION**

56. On March 10, 2026, BMC South filed Civil Action No. 1:26-CV-11215-LTS (the "Related Action"), seeking a declaration that the Grievance is not substantively arbitrable. The Union has asserted a counterclaim in the Related Action for declaratory relief, and BMC South's Motion for Summary Judgment on substantive arbitrability, filed September 29, 2026, is pending.

**COUNT I**
**Vacatur – The Grievance Is Not Substantively Arbitrable (29 U.S.C. § 185)**

57. BMC South repeats and incorporates the foregoing allegations.

58. Whether the parties agreed to arbitrate a dispute is for the Court to decide. BMC South preserved its objection and participated in the arbitration only under express reservation, which the Arbitrator acknowledged. *See* **Exhibit N** at 2.

59. Under the APA, the September 13 Order, and the MOA, BMC South did not

assume, and therefore did not agree to arbitrate, liability arising from or relating to events, circumstances, or conditions occurring or existing at or before the Effective Time. The Grievance seeks relief for increases that allegedly became due from Steward in September 2024 and is therefore not substantively arbitrable.

60. The Award should be vacated in its entirety for lack of arbitral jurisdiction.

**COUNT II**
**Vacatur – The Award Does Not Draw Its Essence From The CBA And Exceeds The Arbitrator's Authority (29 U.S.C. § 185)**

61. BMC South repeats and incorporates the foregoing allegations.

62. An award is enforceable only so long as it draws its essence from the collective bargaining agreement; an arbitrator may not dispense his own brand of industrial justice or modify, add to, or disregard the parties' agreement.

63. The Award does not draw its essence from the CBA, as modified by the MOA, and exceeds the authority conferred by Article 24, because it: (a) acknowledges that BMC South's liability is limited to breaches arising on or after October 1, 2024, yet imposes liability for increases that allegedly became due in September 2024 by relabeling the continuing effects of Steward's alleged omission as new violations; (b) rests on assumption and surmise rather than the individualized findings Article 12.01 requires, and defers the determination of entitlement to the parties; and (c) elevates the Arbitrator's perceived and unsubstantiated concerns about wage uniformity over the liability limitations incorporated into the parties' agreement, thereby dispensing his own brand of industrial justice. *See* **Exhibit N** at 5, 16-17, 20-23.

64. The Award should be vacated.

**PRAYER FOR RELIEF**

WHEREFORE, BMC South respectfully requests that the Court:

1. Vacate the October 6, 2026 Award in its entirety under 29 U.S.C. § 185;

2. Award BMC South its costs; and

3. Grant such further relief as the Court deems just and proper.

Respectfully submitted,

BOSTON MEDICAL CENTER – SOUTH,

By its attorneys,

*/s/ Ashley C. Krezmien*
Matthew D. Freeman (BBO # 664355)
Ashley C. Krezmien (BBO # 711312)
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, MA 02116
T: (617) 367-0025; F: (617) 367-2155
Matthew.Freeman@jacksonlewis.com
Ashley.Krezmien@jacksonlewis.com

Dated: November 5, 2026