# Exhibit N

**THE LABOR RELATIONS CONNECTION**

In the Matter of Arbitration Between:

**1199SEIU UNITED HEALTHCARE WORKERS EAST**

And **OPINION AND AWARD**

**BOSTON MEDICAL CENTER - SOUTH**

No. #328-25 (Articles 12.01, 24 and 26
Class Action – Anniversary Increases)

**APPEARANCES**

**For the Union:**
Ian O. Russell, Esq.

**For the Employer:**
Matthew D. Freeman, Esq.[1]
Ashley C. Krezmien, Esq.

**INTRODUCTION**

On April 2, 2025 1199SEIU, United Healthcare Workers East ("the Union") filed a grievance alleging that Boston Medical Center - South ("the Employer") violated the parties' collective bargaining Agreement ("the Agreement") by failing to pay anniversary increases due certain employees. The grievance remained unresolved due to the Employer's assertion it was not liable for any claim arising prior to its October 1, 2024 acquisition of the Brockton, Massachusetts hospital ("the Hospital"). The Union demanded arbitration, leading to the parties selecting the undersigned as arbitrator.

The formal hearings in this matter were preceded by a series of virtual conferences, prompted by the Employer's contention that the dispute was not subject to arbitration due to circumstances to be reviewed in the Factual Background. The

[1]Robert Morsilli, Esq. appeared on behalf of the Employer prior to and on the first day of hearing. After he changed professional venues, he was succeeded by Mr. Freeman. Ms. Krezmien has represented the Employer throughout.

Employer also filed a civil action in the United States District Court for the District of Massachusetts challenging the Union's efforts to secure arbitral relief. The Employer did not seek a stay of the arbitration proceeding.

Ultimately, it was determined that the Employer would appear specially, reserving its right to continue challenging the arbitrator's jurisdiction, while participating in the hearing. The parties agreed the arbitrator was empowered to resolve the Employer's challenge to the procedural arbitrability of the grievance and the merits of the Union's contract claim. The arbitrator was not empowered to consider, much less resolve the Employer's objection to the substantive arbitrability of the grievance. That issue is reserved for judicial determination. Nothing in this Opinion and Award should be construed as suggesting the arbitrator' views on the merits of the Employer's challenge to the substantive arbitrability of this dispute.

Hearings on the issues deemed proper for arbitral resolution were held before the undersigned on a video conference platform on March 20, 2026 and June 22, 2026. At those hearings, both parties were present and represented by counsel. Following presentation of the evidence, both parties sought leave to submit post-hearing briefs. Upon the Labor Relations Connection's receipt of those briefs, following two agreed upon extensions, the matter was ripe for resolution.

**THE ISSUES**

1. Whether the grievance is procedurally arbitrable?
2. Did the Employer violate the Agreement by failing since October 1, 2024 to pay the correct wage to employees who did not receive anniversary increases in September 2024?

3. If so, what shall be the remedy?

**RELEVANT PROVISIONS OF THE AGREEMENTS**

**ARTICLE 12. COMPENSATION & OVERTIME.**

**Additional Increases on Anniversary Dates During January 1, 2020-December 31, 2024**

The Parties agree that, effective on each Worker's anniversary date beginning on January 1, 2020, Workers will move up through the applicable wage scale as follows:

| Distance from Experience Step | Step Movement Year 1 | Step Movement Year 2 | Step Movement Year 3 | Step Movement Year 4 | Step Movement Year 5 |
|---|---|---|---|---|---|
| 5+ | 2 | 2 | 2 | 2 | 2 |
| 4 | 1 | 2 | 2 | 2 | 2 |
| 3 | 1 | 1 | 2 | 2 | 2 |
| 2 | 1 | 1 | 1 | 2 | 2 |
| 1 | 1 | 1 | 1 | 1 | 2 |

Workers who are below the scale shall receive an increase of four percent (4%) per year until they reach the bottom step of the range associated with their Job Grade and then will follow the chart above for step movement, effective on the first regular full pay date following the Worker's anniversary date.

Workers who have fewer than twenty (20) years of Experience and whose rate is above their Experience step rate shall receive a two percent (2%) lump sum bonus on their first regular pay date following their anniversary date, and shall remain on that step on the scale until their years of Experience are equal to that step number. Such bonus shall be calculated on the basis of hours of work in the preceding twelve (12)-month period multiplied by the Worker's base hourly rate.

Workers who have twenty (20) or more years of Experience and whose rate is at step 20 or above shall receive a two percent (2%) wage increase, effective on the first regular pay date following the Worker's anniversary date.

For the period of January 1, 2020 to December 31, 2020, no Worker shall receive an aggregate increase in pay rate that is greater than six percent (6%) while working in the same job title. However, for Workers whose rate was below fifteen dollars ($15.00) per hour and is being increased to fifteen dollars ($15.00) during that period, the aggregate increase may exceed six percent (6%) for that year.

The Parties agree that if there are Workers whose wage rates do not correspond exactly to the rate of a step at the end of the Agreement, then they will devise a solution that will place their wage rates on the appropriate steps in the first year of the subsequent collective bargaining agreement.

**Article 24. Grievance and Arbitration.**

**Section 24.01 Purposes**

The purpose of this Article is to establish a procedure for the settlement of grievances. The Parties recognize that most disputes will be discussed and resolved between the Worker and the 8 Worker's immediate supervisor. The matters so handled will not be deemed to be grievances. If a dispute is not resolved in this informal manner, the formal procedure outlined below will be initiated.

**Section 24.02 Informal Process**

Workers are encouraged to bring concerns/issues to their immediate supervisor to see if the matter can be resolved informally. The immediate supervisor may seek the help of the Department Head, Union Delegate, or a member of Human Resources to help resolve the matter without the need for a formal grievance process. If the issue is not resolved informally, the following process should be followed for formal grievances, and the timeliness for the grievance process shall begin.

**Section 24.03 Formal Procedure**

In the event of a controversy concerning the meaning or application of any provision of this Agreement, such controversy shall be treated by the Union and the Employer as a grievance and shall be settled, if possible, by the Union, the Worker and the Employer as set forth hereafter. At all steps of the Grievance Procedure, the Worker or Delegate will submit the grievance, in writing, explaining as specifically as possible, the nature of the complaint and identify the contract provision(s) affected. Group grievances may be submitted at Step 2.

**Step 1 – Department Head/Manager**

The Workers or Delegate will present a grievance in writing to the Manager or Department Head within twenty (20) working days from the date of the alleged violation of the contract. The grievance must include facts, dates, applicable provision(s) of the contract and the remedy requested. Within fourteen (14) working days of receipt of the grievance, the Manager or Department Head will respond to the grievance in writing within ten (10) working days from the date of the grievance meeting.

**Step 2 – Senior Management and Human Resources**

If the matter is not resolved through the process for the Step 1 grievance, the Delegate will present a Step 2 grievance in writing to the Human Resources Department within ten (10) working days of receipt of the Step 1 response. The Director of Human Resources and the appropriate Vice President (CNO or other member of SLT) will set up a meeting with the Delegate and the Grievant to hear the grievance, within ten (10) days of receipt of the Step 2 grievance. If the grievance is not resolved at this meeting, the Director of Human Resources will have ten (10) working days to respond to the grievance in writing

## FACTUAL BACKGROUND

The Employer was previously known as Good Samaritan Medical Center. It was one of the hospitals owned by Steward Health Care System LLC ("Steward"). As we all know, Steward filed for Chapter 11 bankruptcy, a proceeding resulting in the sale of a number of its hospitals. Good Samaritan was acquired by Boston Medical Center which changed the name to reflect its ownership. The sale was approved by the Bankruptcy Court on September 13, 2024.

At the time of the sale, the Union was party to an Agreement with Steward that, by virtue of a Memorandum of Agreement between the Union and Steward was in effect until October 31, 2025. The Employer agreed to assume the extended agreement, but its liability for any breaches was limited to those arising on or after October 1, 2024.[2] On September 30, 2024, the parties executed a Memorandum of Agreement reflecting that assumption, including the limitation on its liability for any breaches arising prior to October 1, 2024.

---

[2]The Employer's challenge to the substantive arbitrability of this dispute is predicated on the terms of its acquisition and its reflection in the September 30, 2024 Memorandum. At the risk of being repetitive, the arbitrator is not empowered to or otherwise considering the Employer's challenge to the substantive arbitrability of the grievance and nothing in this Opinion should be deemed to reflect his views on the proper resolution of that issue.

In January 2025, the Union informed the Employer it believed view Steward failed to implement so-called anniverary increases in September 2024, prior to the Employer's acquisition of the hospital. It sought a meeting with the Employer to discuss that issue in a January 15, 2025 email. The Employer responded the next day indicating its belief employees were being paid properly and that it could not "fix issues that may have existed prior to October 1, 2024."

The Union continued pursuing its claim. A January 31, 2025 Union email to the Employer claimed a named employee had not received a required increase. The Employer's response mirrored its answer to the Union's January 15, 2025 email. A February 13, 2025 email about another named employee elicited a similar response on February 19, 2025.

On April 2, 2025, the Union filed this grievance. Captioned as a class action, it sought relief on behalf of twenty-six employees who were alleged to have been improperly denied step increases during September 2024. The class members were identified by the assigned Union's representative. He did so by comparing a list of employees reflecting their pay rates, job titles and experience level prior to the acquisition by the Employer with a list prepared by the Employer, as of October 1, 2024.

The Steward documents used service dates preceding its 2010 acquisition of the Hospital. It appears Steward used those dates to determine an employee's experience level in the case of non-technical employees. The documents also included the experience level for technical employees which is computed differently from those of non-technical employees. At least some, if not all, class members received anniversary increase in October 2025, seemingly relying upon the dates utilized by Steward.

None of the class members received any wage increase contemporaneous with their September 2024 anniversary dates. The documents reflected their receipt of a two percent across the board increase in November 2024 and their receipt of a pay increase in September 2025, a month corresponding to their anniverary dates. The documents did not indicate whether any of the class members received a lump sum payment.

The Union's compilation of the class members was based solely upon their anniversary dates and did not utilize the more detailed analysis required by Article 12 of the Agreement. Article 12 does not provide for simple anniverary increases. Its application requires more detailed analysis.

Under Article 12, an employee's eligibility for an anniversary increase depends upon their length of service with the Hospital or from the date they acquired status as a technical employee. That information is used to determine their placement on a pay schedule negotiated by the parties. That scale is reflected in a grid containing the various job grades used by the parties and provides for a twenty-step wage scale for each grade.

Under ordinary circumstances, if there is such a thing, a non-technical employee's placement on the grid would coincide with their years of service. The placement of technical employees would be determined as provided by the Agreement. Employees would normally be on a step commensurate with their experience level and would advance one step in the pay period following their anniversary.

For reasons not relevant to this case, this is not true in all cases. The relevant provision of Article 12 governed anniverary increases between January 1, 2020 through October 2025, the extension date. That Agreement uses a formula for determining those increases. The parties agreed employees with more than twenty years of experience who

were at or above the top step would receive a two percent increase on in the first pay period following their anniversary dates.

Article 12's application to employees with fewer than twenty years of experience is more complicated. Employees who were not even on the wage scale were awarded four percent increases until reaching the first step on that wage scale. Thereafter, their movement and anniversary increases are reflected in a chart covering the period from January 1, 2020 to September 2024 and, by virtue of the extension to October 31, 2025.

Under that chart, employees who are five or more steps below their experience step[3] move two steps per year over a five-year period. Employees four years below their experience step receive an initial one step bump, followed by four years of two step increases. The chart makes further similar adjustments until it reaches employees one step removed from their experience step, who move up one step each year over a five-year period. The relevant section of Article 12 provides employees with less than twenty years of service who are above their experience step should receive a two percent lump sum bonus, coincident with their anniversary dates. Those employees remain on their steps until their experience catches up to their step placement. Viewed as a whole, Article 12 appears to provide all employees with something on their anniversary dates, either a step or wage increase or a lump sum payment.

Determining the employee's experience step placement is somewhat complex. The step placement of non-technical employees is measured by their length of service. The step placement of technical Employees is measured by the date they acquired any

[3]An employee's experience step is not necessarily the same as their length of employment. As explained *infra*, employees in technical classifications are treated differently than employees in non-technical classifications.

required licenses or certifications or their experience in comparable positions. Their step placement does not necessarily coincide with their first day of employment.

The Union filed this grievance without performing any of this analysis. Thus, the arbitrator must examine the record evidence to determine whether the Union demonstrated that any of the class members are being improperly paid. The process is akin to putting together a jigsaw puzzle. It requires examining separate documents reflecting the pay history, length of service and job titles of the cited class members. The Union's brief identified certain class members as exemplifying employees for whom the documentary evidence supports finding their being deprived of their anniversary increases under the exacting provisions of Article 12. It also provided live testimony from two class members which put some meat on the documentary bones.

One example cited by the Union is Patient Access Coordinator I, Karen Burns. She was hired in September 1987, thus giving her more than twenty years of service. A document prepared by Steward uses that date as her seniority date, suggesting, as does her job title, that she is not a technical employee. She did not receive any pay increase in September 2024, but did receive the across-the-board increase in November 2024. As an employee with more than twenty years, the Agreement entitled her to either a step increase or a two percent increase coincident with her anniversary date. She does not appear to have received either benefit.

The Union's brief did not reference Lynn Andrews, a scheduler with more than twenty years of experience. She was hired in September 1986 and in a non-technical position. Like Ms. Burns, she did not receive any increase in September 2024 but received the across-the-board increase in November 2024.

The class list prepared by the Union contains the name of three other employees with more than twenty years of experience. One of those employees, Catherine McNeil, is quite similar to Ms. Burns and Ms. Andrews. Ms. McNeil, a Bed Management Coordinator, was hired in September 1997 and has a pay history similar to that of Ms. Burns and Ms. Andrews.

Two other employees, Certified Nursing Assistant Elizabeth Burgher and Unit Coordinator Lan Fryer, were hired in September 2024. Both appear to have claims based upon having “twenty or more years of service” in September 2024. Assuming their hire dates fall under the contract standard, neither received step increases in September 2024.

The Union presented two witnesses whose testimony obviated the need to perform the jigsaw puzzle analysis. One such witness, Scott Matthews, was a Materials Aide, with less than twenty years of seniority, who was hired in 2009. Although his experience step may have changed at some point prior to 2024, he was on Step 14 of the wage scale at in September 2024. He testified, consistent with the record evidence, he did not receive an increase in September 2024 or a two percent lump sum payment.

Still another witness, Laurie McBride, an Exercise Technician, was in a Grade 19, position at the time of the grieved events. Her job title and grade were changed by agreement of the parties. Her Grade 19 placement represented an upward movement from her prior Grade16 status. She was hired in 2005 and thus in September 2024 was had nineteen years of service. In September 2024, she was being paid at a rate corresponding to Step 3 in a Grade 19 job. This was below her experience step, unless her position was deemed a technical classification, an issue on which the record is silent. She too did not

receive any wage increase in September 2024 and does not appear to have received a two percent lump sum bonus.

The Union's brief discusses two other class members, Caleigh Wright and Cassandra Bryant. Both employees appear to have been working at or below their experience level in September 2024 and did not receive increases coincident with their anniversaries. To avoid prolonging this Opinion, the arbitrator is not making specific fact findings in either of those two cases.

## POSITIONS OF THE PARTIES

**Union Position:**

The Union claims to have demonstrated the Employer violated the Agreement by failing to pay anniversary increases that became due in September 2024. The evidence demonstrates, it argues, that employees with September anniversary dates received only the general, two percent wage increase in November 2024, but did not receive the anniversary step increase provided by the Agreement.

The Employer's claims to the contrary, it argues, are without merit. Thus, it says, the suggestion that its predecessor's records were inaccurate is belied by the Employer's reliance on those records for all other compensation related purposes. There was, it says, also testimonial evidence from employees demonstrating the records' accuracy.

The Union also disputes the Employer's claim that some or all class members were not entitled to anniversary increases because of their years of experience or their place on the wage scale, or both. There is, it argues, no evidence that any of the cited employees were above their step rates. The absence of any foundation for the Employer's claim, it continues, is demonstrated by the Employer's having given those

same employees anniversary step increases in September 2025. Other testimonial and documentary evidence, it says, shows that employees with less than twenty years of experience were not paid above their step rates when the September 2024 anniversary increases were due.

The Employer, the Union continues, produced no evidence rebutting the employee testimony recounting their failure to receive anniverary increases. Nor, it says, did the Employer rebut the evidence demonstrating that class members were not ineligible to receive anniversary wage increases due to their years of experience and step placement. Some class members, it notes, had more than twenty years of experience and would not have received lump sum payments in lieu of anniverary increases.

The Union thus claims to have demonstrated that at least some employees in the class were entitled to but did not receive anniverary increases. Even if some class members are ineligible, it argues, that issue can be resolved when the parties implement the appropriate remedy.

The Union also contends that the grievance is procedurally arbitrable because each paycheck containing the employees' improper pay rate is a new violation of the Agreement. The grievance, it thus says, alleges a continuing violation. The doctrine is particularly relevant here, it avers, because a failure to remedy the contract violation will impact the employees for there rest of their working lives with the Employer. The Union's claim prior awareness of any contract violations, it says, only the appropriate remedy, not the procedural arbitrability of the grievance. In this instance, it argues, the remedy would thus commence on March 5, 2025, twenty business days prior to the April 2, 2025 filing of the grievance.

**Employer Position:**

The Employer first contends that the grievance was not timely filed and must be dismissed because it is procedurally non-arbitrable. Article 24 of the Agreement, the Employer avers, requires grievances to be filed within twenty days of the alleged contract violation. The Union, it explains, obviously failed to do so in this case. The grievance alleges, it explains, the claimed contract violation occurred in September 2024. There is, it says, no basis for finding that either employees or the Union were not or should not have been aware of the alleged violation. The April 2025 grievance, it avers, was filed well outside of the required time-period. Even if the filing period was deemed triggered by the Employer's February 19, 2025 email, it claims, the result is the same.

The Union, the Employer continues, cannot rely on continuing violation theory to rescue it from the consequences of its delay in filing the grievance. The claimed violation here, the Employer argues, the denial of a step increase was a single, discrete act claimed to produce the contract violation. Other arbitrators, it asserts, have found that such cases do not give rise to continuing violations, thus requiring the grievance's dismissal.

Even if the grievance is deemed to allege a continuing violation, the Employer continues, any remedy must be keyed to the date on which the grievance was filed. There is, it concludes on this point, no basis in arbitral jurisprudence for enlarging the remedial period beyond the grievance filing period contained in the Agreement.

Even if the arbitrator concludes that the merits are properly before him, the Employer says, the Union's failure to satisfy its burden of persuasion on the merits compels denying relief. The plain language of Article 12, the Employer explains, demonstrates it does not provide a guaranteed anniversary wage increase.

To the contrary, the Employer explains, it explicitly requires individualized determinations based upon an employee's years of experience and placement on the agreed upon wage scale. Fixing the employee's years of experience, it observes, depends upon whether an employee is in a technical or non-technical classification, while their step placement requires resort to the agreed upon salary grid. Only those employees with more than twenty years of experience who are at or above the top step on the wage scale, it says, are guaranteed an anniversary increase. Others, it argues, are entitled to a lump sum, while a third group may not be entitled to any anniversary increase.

The Union acknowledged, the Employer continues, it did not do any of analysis required by the express provisions of Article 12 before filing this grievance. The documentary evidence presented by the Union, it continues, is devoid of the critical data required for consideration by Article 12. Indeed, it contends, the Union's own witness acknowledged it never attempted to determine whether any employee was below, at or above a particular step on the wage grid, despite the requirements of Article 12. Nor, it says, did the Union determine whether any class members received a lump sum payment.

The evidence from the bargaining unit members, the Employer continues, did not fill in the evidentiary voids. Their testimony, it says, was vague as to their step placement in 2024 or any wage history that would be critical to determining the proper application of Article 12. The Union's rebuttal witness, it contends, did not commence working at the Hospital until after its acquisition and thus had no knowledge about how the Employer's predecessor administered Article 12.

The Union, the Employer continues, also failed to demonstrate a past practice supporting granting relief. Any claimed practice, it contends, could not overcome the

explicit language of Article 12. In any event, it argues, there was no evidence demonstrating the existence of any past practice. At most, it contends, the Union produced anecdotal evidence devoid of any relationship to the information required for the proper application of Article 12 of the Agreement.

For these reasons, the Employer concludes, the grievance should be dismissed as untimely or denied on the merits. Under no circumstances, it says, has the Union demonstrated entitlement to relief.

## OPINION

At the outset, we must address the Employer's claim that the grievance was filed too late and is not arbitrable. The Employer bears the burden of persuasion and, in meeting that burden, must overcome a presumption of arbitrability. It has not done so.

On its face, the Employer's claim has considerable power. Article 24.03 of the Agreement requires Step 1 grievances to be filed within "twenty (20) working days from the date of the alleged violation" of the Agreement." Viewed strictly through this lens, an April 2025 grievance alleging a September 2024 violation of the Agreement would be untimely, thus precluding arbitral resolution of the merits of the grievance.

Even if we assume that the Union did not have final notice of the claimed breach until the Employer's February 19, 2025 email, the result is the same. Even the math challenged among us can discern the grievance was filed way beyond the twenty-day period provided by Article 24 of the Agreement. Under either view, the Union's seeming procedural default would deprive the arbitrator of jurisdiction.

This case, however, rests on a different analytical framework because it involves the employees' rate of pay. The overwhelming body of arbitral case law views a

grievance like this as alleging a continuing violation.[4] Under that widely accepted and applied theory, a triggering event occurs each time an employee receives a paycheck with an improper pay rate because each paycheck inflicts a separate injury.

The Employer's contrary authority is unpersuasive. The cited authority is a minority view and for good reason. It views an employer's adoption of the erroneous rate of pay as a singular act triggering the grievance filing period. It disregards the fact each paycheck produces a separate and distinct injury. The repeated injury is more than a later consequence of the claimed violation of the Agreement.[5]

Our fact situation illustrates why arbitrators generally apply continuing violation theory in this context. If the Union's views on the merits are correct, employees with anniversary dates in September should have received step or wage increases in or about September 2024. Let's assume two employees were hired into the same job at the same rate of pay. One was hired on October 1, while the other was hired on September 1. If this grievance is not arbitrable, the record demonstrates the employee hired on October 1 employee received a step increase. That would benefit the employee through their remaining tenure with the Employer. The employee hired on September 1, however, would not have received their increase and would remain one step behind their October 1 counterpart for their entire career with the Employer. Two virtually indistinguishable employees would be paid at different rates.

---

[4]The arbitral jurisprudence anticipated and now parallels the direction taken by external law. *See, e.g.*, The Lilly Ledbetter Fair Pay Act of 2009, Pub. Law 111-2, codified at 42 U.S.C. §2000(e) – 5(e).

[5]This might be true in cases where an employee was not credited with sufficient seniority due to the unlawful operation of a negotiated seniority system and years later was laid off as a result. *See, e.g., United Airlines v. Evans*, 431 U.S. 553 (1977). Notably, *Evans* itself was legislatively overruled in Section 112 of the Civil Rights Act of 1991, codified in 42 U.S.C. §2000e-5(e).

It is more reasonable to assume the parties intended both employees to receive the same rate of pay. The parties' agreement to the wage grid setting the step rates for each job grade is compelling evidence of that proposition. Unless that grid is dismissed as window dressing, it conclusively demonstrates the parties' efforts to achieve wage uniformity among similarly situated employes. Refusing to apply continuing violation theory produces a scenario conflicting with the parties' intent. Applying the theory produces the result envisioned by the parties. This grievance was timely filed because it alleges a continuing violation.

This does not mean the date of the Union's filing is without consequence. As claimed by the Employer, the Agreement's grievance filing period limits the arbitrator's remedial authority. Should the Union prevail on the merits, the remedy would not date back to September 2024. Well established mainstream arbitral jurisprudence counsels commencing the retroactive component of the remedy to the period for filing grievances contained in the Agreement, in this case twenty days prior to April 2, 2025. The Employer would get the benefit of its bargaining by not being on the hook for back pay from September 2024.

We can now proceed to the merits.

The resolution of the merits of this grievance depends primarily upon those portions of Article 12 of the Agreement governing anniversary increases in the period between January 1, 2020 and December 31, 2024. By virtue of the extension Agreement, that provision was operative until October 31, 2025.

The text and language of this section demonstrate beyond any doubt it does not provide all employees with step or wage increases on their anniversary dates. The

assumption on which the Union representative appeared to proceed was not correct. The application of the controlling portion of Article 12 requires a more complex analysis.

The relevant section begins with a grid showing how employees at various levels below their experience step on the parties' wage grid progress. That cited grid lists the various job grades, each of which are each assigned various wage levels that progress over twenty steps signifying the employee's experience level. Once employees enter the grid, they continue an upward progression until they reach Step 20.

Language underneath the grid addresses a group of employees whose pay rates are below the negotiated scale. Those employees receive four percent increases on their anniversaries until they reach the bottom step on the parties' wage scale. Once employees reach that level, their anniversary increases are governed by the grid. Based on the record, none of the class members fall within this latter category.

Thereafter, the section provides various forms of anniversary increases. Article 12 seemingly provides all unit employees receive some form of compensation coincident with their anniversary dates. In some cases, that increase comes in the form of a step or percentage increase. In others it comes in the form of a lump sum payment.

The current grievance encompasses employees the employees claimed to be entitled to a step or percentage wage increase in September 2024. It does not encompass employees who might have been entitled to a lump sum payment. Nor could it.

The lump sum would have been due and payable far more than twenty days prior to the filing of this grievance. It was indisputably a singular act and could not be considered a continuing violation. To be sure, the employee suffers a one-time economic loss but does not suffer the continuing of a missed wage or step increase. This grievance

was filed too late to put that issue before the arbitrator. The only question properly before the arbitrator is whether the Union demonstrated any member of the class was entitled to a step or wage increase in September 2024 and did not receive it.

Eligibility for those increases is a function of the employee's years of experience and their place on the wage grid. That determination is complicated because an employee's experience level is computed in two different ways. Their experience date will differ from their hiring date.

The easiest rule under this section is applicable to employees with twenty or more years of experience who are at or above the top step of the wage scale. Those employees must receive a two percent increase in the first paycheck following their anniverary date.

It gets more difficult in the case of employees with less than twenty years of experience. If the employee's step is below their years of experience, they progress upward through the steps at the pace reflected set forth in the cited chart. Employees on step levels above their years of experience receive a two percent lump sum bonus in their first paycheck following their anniversary date.

The treatment of employees with less than twenty years of experience who are at their experience step on the grid is also governed by Article 12. The grid in the relevant section of Article 12, as well as the introductory language in Article 12, provides such employees will advance one step on their anniversaries. The first such payment is due in the first pay period following their anniversary.

The Employer places great emphasis on the Union's failure to analyze the eligibility of class members for an anniversary increase considering all the factors. The grievance was based solely upon its identifying employees with anniversary dates in

September who did not receive a wage increase in September 2024. The Union's misapprehension of the Article 12 standard makes it more difficult for the Union to sustain its burden of persuasion, but it does not foreclose it from doing so.

This grievance is a class action grievance. The Union need not demonstrate that every member of the class was injured by the claimed violation of the Agreement. If the record supports finding one or more class members should have received an anniverary step or wage increase and did not, the grievance must be sustained. The remedial entitlement of other class members, if any, can be determined during the implementation of the appropriate remedy. There is sufficient evidence in the record to support finding that one or more members of the class should have received an anniversary step or wage increase in September 2024 and did not. The grievance must be sustained.

We can start with the proposition that the Union's burden of persuasion is a fair preponderance of the evidence. That does not require it to eliminate every reason an employee may not have been entitled to a step or wage increase, rather than a lump sum bonus. If, despite the issues raised by the Employer, the record demonstrates some class members were more likely than not, entitled to a step or wage increase in September 2024 and did not receive it, the Union's burden would be met.[6]

The arbitrator recognizes the critical records relied upon by the Union were prepared by Steward. Understandably, the Employer lacks knowledge about the methodology utilized by Steward in compiling those records. Most notably it does not know how Steward utilized the hire dates of employees hired prior to its 2010 acquisition

[6]One cannot help but note that at least some class members received step or wage increases in October 2025, thus raising an inference that a similar result should have occurred in September 2024. The arbitrator is not relying on that inference since the evidence of record does not require its consideration. The arbitrator cannot help but surmise that Steward may not have paid much attention to this issue in September 2024 since it was in the process of selling the Hospital.

of the Hospital in applying the Agreement. It is, however, all that is available. Other than suggesting possible problems, the Employer has not identified specific facts precluding the Steward records from being considered for what they are. Those records, coupled with the first-hand testimony, demonstrate it is more likely than not that some members of the class should have received step or wage increases in September 2024 and did not.

The easiest case concerns those employees with more than twenty years of experience. Those employees at or above the wage scale were entitled to a two percent increase. If they were on the scale, they should have received a step increase. There was no provision for such employees to receive lump sum payments. If none of those employees received a step or wage increase coincident with their anniversary dates, its absence would demonstrate a violation of the Agreement.

The documentary evidence, reviewed in the Factual Background, demonstrates three listed class members with far more than twenty years of service did not receive increases in September 2024. Two more with hire dates in 2004 likely would have been eligible for an increase. None of those employees received any wage increases between September 1, 2024 and the across-the-board increase in November 2024. Since all employees with twenty years or more of experience were entitled to a wage increase, rather than lump sum payments, the absence of any increase violated the Agreement.

The were was also evidence, discussed in the Factual Background, that some employees with less than twenty years of service did not receive wage increases required by the Agreement. Two of those employees testified they did not receive any step increase, much less a lump sum payment, coincident with their anniversary dates. Despite uncertainty about the hire dates utilized by Steward and the like, their testimony,

consistent with the documentary evidence makes it more likely than not that their failure to get step or wage increases violated the Agreement. The Union also referenced the cases of two other employees with apparently strong claims of entitlement to anniversary step increases. The arbitrator did not make specific findings, one way or the other as to those two employees.

The Union thus demonstrated that as few as seven and perhaps as many as nine members of the twenty-six-person class should have received step or wage increases and did not. There is no evidence any of these employees received a lump sum payment. This demonstration compels sustaining the grievance and the award of a make whole relief to the eligible class members. The make whole period begins with pay periods within twenty days of the April 2, 2025 date on which the grievance was filed. The specifics of the make whole remedy, in particular, the identification of class members entitled to a step or wage increase under the arbitrator's interpretation of Article 12 must be determined by the parties upon remand. The arbitrator will retain jurisdiction for a period of sixty days to resolve any disputes concerning the implementation of the remedy.

An appropriate Award shall enter.

**AWARD**

1. The grievance is procedurally arbitrable.
2. The grievance is sustained. The Employer violated Article 12 of the Agreement by failing to pay anniversary step or wage increases that became due in September 2024 anytime after October 1, 2024.
3. As a remedy, the members of the class identified by the Union shall, if determined eligible, be made whole from the period commencing with pay period within twenty days of April 2, 2025 and continuing thereafter. The arbitrator shall retain jurisdiction for a period of sixty days to resolve any disputes concerning the implementation of the remedy.

____________________________
Marc D. Greenbaum, Arbitrator
Dated: October 6, 2026